# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 35

**OCTOBER TERM, A.D. 2015**

**March 11, 2016**

IN THE MATTER OF THE PATERNITY
OF HLG, minor child:

JN,

Appellant
(Respondent),

v.                                                                      S-15-0182

RFSG,

Appellee
(Petitioner).

*Appeal from the District Court of Natrona County*
The Honorable Catherine E. Wilking, Judge

*Representing Appellant:*
Guy P. Cleveland of Cleveland Law, Cheyenne, Wyoming.

*Representing Appellee:*
Jason E. Ochs of Ochs Law Firm, P.C., Casper, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   JN (Mother) appeals from the district court's order granting RFSG (Father) custody of their son, HLG (the child).  She claims the district court abused its discretion by refusing to allow the child's therapist to give opinion testimony at the custody hearing.  We conclude the district court properly applied the rules of civil procedure and, therefore, affirm.

## ISSUE

[¶2]   The issue in this case is:

Whether the district court abused its discretion by refusing to allow the child's therapist to give opinion testimony because Mother did not comply with her discovery obligations.

## FACTS

[¶3]   The child was born to Mother and Father in 2008.  The parents were not married, but the family lived together until January 2010.  After the parties' separation, the child lived with Mother and, although there was no order on visitation or custody, Father regularly visited the child for a time.  The State filed a petition to establish support for the child, and the district court entered an order requiring Father to pay child support in January 2011.  He consistently paid child support but did not visit the child after Christmas 2010.

[¶4]   In February 2013, Mother, who had since married, filed a petition for adoption of the child by her husband.  Father contested the petition, and the district court denied the adoption.  Father filed a petition to establish paternity and visitation in March 2013.  While the matter was pending, the district court granted Father temporary visitation with the child.  For several months, Mother did not comply with the temporary visitation order.  Father filed two motions for order to show cause, and the district court found Mother in contempt of court. Eventually, regular visitation between Father and the child was established.

[¶5]   In December 2013, Father amended his petition to seek custody of the child.  The district court held a trial on Father's petition in April 2015.  Mother called the child's counselor, Cindy Parrish, to testify at trial.  The counselor testified about her observations during therapy sessions with the child.  However, when Mother's attorney asked the counselor about her opinion on a drawing the child made during counseling, Father objected.  The district court sustained the objection, ruling that Mother had not disclosed

1

the counselor's opinion prior to trial as required by the Wyoming Rules of Civil Procedure.

[¶6]    After the trial, the district court granted custody of the child to Father, subject to Mother's visitation rights.  Mother appealed.

## STANDARD OF REVIEW

[¶7]    We review the district court's interpretation of the rules of civil procedure *de novo*.  *Dishman v. First Interstate Bank,* 2015 WY 154, ¶ 13, 362 P.3d 360, 365 (Wyo. 2015); *Windham v. Windham,* 2015 WY 61, ¶ 12, 348 P.3d 836, 840 (Wyo. 2015).  The district court's decision on the admissibility of evidence is reviewed under the abuse of discretion standard.  *CL v. ML,* 2015 WY 80, ¶ 15, 351 P.3d 272, 277 (Wyo. 2015).

> A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion.

*Wise v. Ludlow,* 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015), quoting *Glenn v. Union Pacific R.R. Co.,* 2011 WY 126, ¶ 12, 262 P.3d 177, 182 (Wyo. 2011).  *See also CL,* ¶ 15, 351 P.3d at 277.  Likewise, the district court has discretion in selecting an appropriate sanction for discovery violations, and we interfere with its decision only when the district court abused its discretion.  *Roemmich v. Roemmich,* 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010); *Ruwart v. Wagner,* 880 P.2d 586, 592 (Wyo. 1994).

## DISCUSSION

[¶8]    In her W.R.C.P. 26 pretrial disclosure, Mother listed Cindy Parrish as a "will call" witness but did not designate her as an expert.  Mother described Ms. Parrish's expected testimony as follows:

> Mrs. Parrish is [the child's] counselor/therapist.  Mrs. Parrish is expected to testify relative to all matters at issue that are within her personal knowledge.  Mrs. Parrish is expected to testify in detail regarding [Father's] refusal to be involved in [the child's] therapy.

Mother provided Father with the records from Ms. Parrish's counseling sessions with the child, but did not provide a report or a summary of her opinions.

2

[¶9]   Ms. Parrish testified at trial that she was a licensed counselor who specialized in children's therapy.  She explained that she began seeing the child at Mother's request because he had developed problems with urine and bowel control and was demonstrating compulsive behaviors such as chewing on his clothing.  Mother attributed the child's problems to visitation with Father.

[¶10]  Ms. Parrish described her counseling sessions with the child and explained that, during one session, she had the child complete an exercise with smiley and frown faces for each home.  Ms. Parrish testified that the child consistently "speaks real positive [sic] about his time with his mom," and crossed out the frown face associated with Mother's house, presumably leaving the smiley face.  Ms. Parrish then stated the child's response was "the opposite with dad." "He . . . didn't say anything good about the dad's house and crossed out the smiley face" and shared "that he does not like being there."

[¶11]  A little later in her testimony, Ms. Parrish described the child's drawings of Mother's and Father's houses.  She stated the child drew Mother's house in yellow and Father's house in green and brown.  Ms. Parrish testified she asked the child about his "wish" with regard to the houses and he said that he wished to stay at Mother's house forever and not see Father.  Mother's attorney then asked Ms. Parrish, "[W]hat do you make of this sort of drawing with a six-year-old, when he's expressing these things to you?"  Father's counsel objected to the question as calling for a "nondisclosed opinion."

[¶12]  The district court asked Mother's attorney if Ms. Parrish's opinion had been disclosed in discovery.  The attorney responded that all of the therapy records had been produced to Father's attorney and Ms. Parrish's witness designation was general.  She also stated that Ms. Parrish was not an expert "in the sense that she's been retained by my office.  She's a treating physician, but that doesn't preclude her from, after working with this child for almost a year, having, in her professional experience, some . . . opinion about the services she's providing[.]"

[¶13]  The district court sustained Father's objection to Ms. Parrish's opinion testimony, explaining:

> . . . I believe that this witness – and her designation says that she can testify about things she has knowledge of. These are the records and the counseling sessions that she's conducted with the child.
> But as far as any opinions that she's come to as a result of that work, I don't believe those were disclosed.  And so I'll sustain the objection. . . .

[¶14]  Mother claims that Ms. Parrish was a lay witness and could properly testify to her opinions under W.R.E. 701:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

In determining whether a witness's testimony is a proper lay opinion under Rule 701, we have stated:

> Lay opinion testimony is intended "only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."

*Tucker v. State,* 2010 WY 162, ¶ 20, 245 P.3d 301, 307 (Wyo. 2010), quoting *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir. 2001). Thus, Rule 701 does not allow a witness without specialized knowledge, experience or education to "offer opinion testimony 'where the subject in question lies outside the realm of common experience and requires special skill or knowledge.'" *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.,* 843 P.2d 1178, 1190 (Wyo. 1992), quoting 3 David W. Louisell & Christopher B. Mueller, Federal Evidence § 376 at 419 (Supp. 1992); W.R.E. 702. *See also Carroll v. Bergen,* 2002 WY 166, ¶ 21, 57 P.3d 1209, 1217 (Wyo. 2002). Lay witness testimony is, therefore, limited to opinions based upon common experience. *See id.*

[¶15] Under W.R.E. 702, only expert witnesses may give opinions on matters of specialized knowledge. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Thus, "[i]f a witness's testimony draws on experience beyond the ken of the average person, that witness must meet the qualification requirements of Rule 702." *Tucker,* ¶ 21, 245 P.3d at 307. *See also Carroll,* ¶¶ 21-22, 57 P.3d at 1217.

[¶16] Mother seems to argue that, because she did not specifically offer or tender Ms. Parrish as an expert witness, the counselor could testify about her opinions as a lay

witness under Rule 701. A witness's opinion is not categorized as lay simply because the proponent does not designate the witness as an expert or offer the witness as an expert at trial.[1] As the cases discussed above instruct, it is the substance of the witness's opinion testimony that determines whether it is expert or lay in nature. "[E]xpert testimony may not be admitted under the guise of lay opinions" because it would undermine the requirements for disclosure of expert opinion. *Tucker,* ¶ 21, 245 P.3d at 307; *Peoples,* 250 F.3d at 641.

[¶17] In *Tucker,* ¶¶ 22-23, 245 P.3d at 307-08, we discussed a Colorado case, *People v. Stewart,* 55 P.3d 107 (Colo. 2002) (en banc). In that case, the Colorado Supreme Court concluded the trial court abused its discretion by admitting, as lay opinion, an officer's reconstruction of an accident. In reaching that decision, the court noted that the officer's testimony about his training and qualifications in accident reconstruction revealed that his opinions were expert rather than lay. Similarly, in *Tucker,* the investigating officer recited his qualifications in accident investigation prior to offering his opinion as to where the passengers in a car had been sitting at the time of the fatal crash. *Id.* We held the officer's opinion was not proper lay testimony because it "was based on matters beyond the officer's personal knowledge or perception, and was based in large measure on the officer's training and experience, which were beyond the ken of the average person." *Id.,* ¶ 24, 245 P.3d at 308.

[¶18] In contrast, *Inman v. State,* 2012 WY 107, 281 P.3d 745 (Wyo. 2012), provides an example of true lay opinion testimony. Inman was convicted of aggravated assault and battery. An officer testified at trial about her personal observations of the location of blood and pieces that broke off the weapon used in the assault and stated her opinion, based upon those observations, as to where the assault had taken place. We ruled her common sense conclusion about where the assault occurred was "rationally based on her perceptions rather than the application of specialized knowledge." *Id.,* ¶ 20, 281 P.3d at 750.

[¶19] As in *Tucker* and *Stewart,* Mother's attorney questioned Ms. Parrish about her education and specialization in child counseling prior to asking for her opinion about the child's drawings. The witness's recitation of her qualifications indicated that her opinion would be expert in nature. Ms. Parrish testified about the colors the child used to draw each parent's house and the child's comments. Mother's attorney then asked what she would "make of" the six year old child's drawing, "when he's expressing these things to you?" This question clearly asked for an opinion based upon the counselor's technical knowledge and training in the field of child therapy. A person without specialized

---

[1] We are not suggesting that an expert must be "offered" as an expert during a trial. Under the W.R.E. 702 it is not necessary to "offer" an expert and a trial court need not expressly state a witness is qualified as an expert before the expert offers opinion testimony. The evidence simply must show that the requirements of W.R.E. 702 were met before the witness offers the expert opinion. *See State v. Brown,* 988 N.E.2d 924, 931 (Ohio Ct. App. 2013).

training or knowledge generally would not know the meaning or implications of a child's drawing made during a counseling session. Under these circumstances, the district court properly refused to allow Ms. Parrish to provide her opinions as a lay witness.

[¶20] The district court also indicated that Ms. Parrish could not testify as an expert because Mother did not comply with the W.R.C.P. 26 requirements for disclosing expert opinions. W.R.C.P. 26(a) states, in relevant part:

> (2) *Disclosure of expert testimony.*
>
> (A) . . . a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Wyoming Rules of Evidence.
>
> (B) (i) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness or disclosure signed by counsel for the party. The report or disclosure shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
>
> (ii) Unless otherwise stipulated by the parties or ordered by the court, if the witness is expected to provide opinions but no report or disclosure under (B)(i) is required, a party must provide a summary of the facts or opinions to which the witness is expected to testify and disclose the subject matter on which the witness is expected to present evidence under Rules 702, 703 or 705 of the Wyoming Rules of Evidence.

[¶21] Mother argues that, if Ms. Parrish's testimony was expert in nature, she should have been given the opportunity to "attempt to qualify" her as an expert. In making that argument, Mother ignores the actual ruling made by the district court. The district court

6

did not address Ms. Parrish's expert qualifications under *Daubert v. Merrill Dow Pharms., Inc.,* 509 U.S. 579, 113 S. Ct 2786, 125 L. Ed. 2d 469 (1993), and Mother did not request that it do so. *See generally Wise,* ¶ 48, 346 P.3d at 13; *Cooper v. State,* 2014 WY 36, ¶ 24, n.2, 319 P.3d 914, 921, n.2 (Wyo. 2014). Instead, the district court excluded Ms. Parrish's opinion testimony because Mother did not produce a summary of her opinions under Rule 26(a)(2)(B)(ii).[2]

[¶22] Mother argues that she was not required to provide an expert report because Ms. Parrish was not "retained or specially employed to provide expert testimony" in the case. It is true that Ms. Parrish was initially employed as a treating medical provider, not as an expert witness. Because Ms. Parrish was not employed specifically as an expert witness, Mother was not required to provide an expert report in discovery. Rule 26(a)(2)(B)(i). *See also Miller,* ¶ 76, 329 P.3d at 978. Compare *Black Diamond Energy, Inc. v. Encana Oil & Gas,* 2014 WY 64, ¶¶ 35-45, 326 P.3d 904, 913-16 (Wyo. 2014); *Wilson v. Tyrrell,* 2011 WY 7, ¶ 52, 246 P.3d 265, 279-80 (Wyo. 2011) (experts retained for trial must be disclosed and reports must be provided under Rule 26(a)(2)).

[¶23] However, given the challenged part of Ms. Parrish's testimony was expert, not lay, in nature, Mother was required to "provide a summary of the facts or opinions to which the witness is expected to testify and disclose the subject matter on which the witness is expected to present evidence under Rules 702, 703 or 705 of the Wyoming Rules of Evidence." W.R.C.P. 26(a)(2)(B)(ii). Mother argued to the district court that she complied with her discovery obligation by providing Ms. Parrish's treatment records. Mother's position is not consistent with the rule. It is well settled that general production of a provider's medical or therapy records does not comply with the requirement for producing a summary of the provider's opinions. *See, e.g., Smothers v. Solvay Chemicals, Inc.,* 2014 WL 3051210, *5 (D.Wyo. 2014) (interpreting F.R.C.P. 26(a)(2)(C) which contains the same disclosure obligations as W.R.C.P. (a)(2)(B)(ii)). In *Brown v. Providence Medical Center,* 2011 WL 4498824, *1 (D.Neb. 2011), a federal district court explained that the plaintiffs' disclosure of medical records was insufficient to meet the summary requirement under Rule 26 because the court "will not place the burden on [the defendants] to sift through medical records in an attempt to figure out what each expert may testify to." Mother's pretrial disclosure did not include a summary of Ms. Parrish's opinions, and production of the counselor's medical records did not meet that

---

[2] We also note that Mother did not disclose that Ms. Parrish "may be used at trial to present evidence under Rules 702, 703, or 705 of the Wyoming Rules of Evidence" as required by Rule 26(a)(2)(A). *Compare Miller v. Beyer,* 2014 WY 84, ¶ 76, 329 P.3d 956, 978 (Wyo. 2014) (defendants properly designated the treating physician as a potential expert witness by stating, "Defendants reserve the right to elicit expert testimony from treating physicians to the extent that those physicians have opinions within their fields of expertise which relate to the issues of liability and causation in this case.").

7

requirement. Thus, the district court properly ruled that Mother had failed to disclose Ms. Parrish's expert opinion.[3]

[¶24] To sanction Mother for failing to comply with her discovery obligation, the district court refused to allow Ms. Parrish to testify about her opinion. That ruling was consistent with the remedy in W.R.C.P. 37:

> (c) *Failure to disclose; false or misleading disclosure; refusal to admit.*
>
> (1)      A party that without substantial justification fails to disclose information as required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. . . .

[¶25] Rule 37(c)(1) provides for automatic exclusion of undisclosed evidence unless there is substantial justification for the failure to disclose, the failure is harmless, or the district court determines another sanction is appropriate. *Dishman,* ¶¶ 28-29, 362 P.3d at 369-70. The party seeking to avoid exclusion has the burden of establishing its failure to comply with the discovery obligations was harmless. *See Black Diamond,* ¶ 45, 326 P.3d at 916. The district court has discretion in determining the proper sanction. *Dishman,* ¶¶ 28-29, 362 P.3d at 369-70.

[¶26] Mother did not expressly argue to the district court that her failure to produce the summary of Ms. Parrish's opinion was substantially justified or harmless under the rule. Nevertheless, she argues on appeal that our decision in *Winterholler v. Zolessi,* 989 P.2d 621, 625 (Wyo. 1999), requires that we evaluate whether she was unfairly prejudiced in the presentation of her case by the exclusion of the evidence.

[¶27] *Winterholler* provides a test to determine whether a party should be allowed to supplement its expert witness disclosure after time has expired under the court's orders or the rules of civil procedure.

> In deciding whether a party's supplementation of its disclosures after the conclusion of expert discovery is fair under the circumstances, courts have considered the following factors:

---

[3] Interestingly, Mother does not discuss the summary requirement set out in W.R.C.P. 26(a)(2)(B)(ii) anywhere in her brief.

8

(1) whether allowing the evidence would incurably surprise or prejudice the opposing party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury.

*Dada v. Children's National Medical Center,* 715 A.2d 904, 909 (D.C.1998) (quoting *Weiner v. Kneller,* 557 A.2d 1306, 1311–12 (D.C.1985)). *See also* Gregory P. Joseph, American Law Institute, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure,* 29 (1999), and cases cited therein. In those instances in which the trial court relies on W.R.E. 403, unfair surprise is relevant to the trial court's consideration of unfair prejudice to the opposing party. Thus, the factors mentioned above will be relevant to the trial court's determination under W.R.E. 403, as well. *See Magyar v. Wisconsin Health Care Liability Insurance Plan,* 211 Wis.2d 296, 564 N.W.2d 766, 769–70 (1997) (proper analysis is to weigh the probative value of the testimony against the danger of unfair surprise).

*Id.* at 628.

[¶28] *Winterholler* was decided prior to our adoption of the current discovery rules and does not take into account the automatic exclusion language of Rule 37. However, we implicitly recognized in *Forbes v. Forbes,* 2015 WY 13, ¶¶ 79-89, 341 P.3d 1041, 1062-64 (Wyo. 2015), that *Winterholler* is still relevant in analyzing whether a party's failure to produce information required by the discovery rules is harmless. *Forbes* is generally consistent with federal jurisprudence on how to test the harm resulting from a discovery violation. In *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999), the Tenth Circuit stated that district courts have broad discretion in determining whether discovery violations are substantially justified or harmless under the comparable federal rule of civil procedure. It listed the following factors to guide the district court's discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad

faith or willfulness." *Id.* The *Winterholler* test does not differ substantially from the test used by federal courts in determining the harmlessness of a failure to disclose.

[¶29] There are, however, several problems with Mother's argument that, under *Winterholler,* she should have been allowed to present Ms. Parrish's opinion testimony. First, unlike in *Winterholler* and *Forbes,* Mother made no effort to supplement her disclosure of Ms. Parrish's proposed testimony prior to the trial; consequently, the district court had no opportunity to apply the test for harmlessness outside of the trial setting. Second, she did not make an offer of proof in the district court, so we do not know what Ms. Parrish's answer to the question about her opinion would have been. Without that information, we have no way of evaluating whether Mother's discovery violation was harmless. In general, when a party fails to make an offer of proof to show the substance of the evidence that would have been presented, she waives any argument that the district court abused its discretion by refusing the evidence. W.R.E. 103(a)(2); *Guy-Thomas v. Thomas,* 2015 WY 35, ¶ 12, 344 P.3d 782, 786 (Wyo. 2012), citing *Contreras v. Carbon Cnty. Sch. Dist. No. 1,* 843 P.2d 589, 595 (Wyo. 1992). Finally, Mother did not address the *Winterholler* factors in the district court. The party seeking to avoid the consequences of a discovery violation has the burden of establishing harmlessness, and she did not meet that burden. *See Black Diamond,* ¶ 45, 326 P.3d at 916. The district court did not abuse its discretion by excluding Ms. Parrish's opinion testimony.

[¶30] Affirmed.